**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

CORREY CRAWFORD
ADC #177810 PETITIONER

v. 4:24-cv-00083-JJV

DEXTER PAYNE, Director,
Arkansas Division of Correction RESPONDENT

**MEMORANDUM AND ORDER**

## I. BACKGROUND

Correy Crawford, Petitioner, an inmate at the Arkansas Division of Correction's East Arkansas Regional Unit, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Respondent, Dexter Payne, Director of the Arkansas Division of Correction, through the Arkansas Attorney General has responded. (Doc. No. 11.)

Mr. Crawford was convicted by a jury in the Circuit Court of Mississippi County, Arkansas, of first-degree murder enhancements for committing a crime of violence while acting in concert with two or more persons and for committing a felony involving the use of a deadly weapon. (Doc. No. 1 at 1 and 23; Doc. 11-5 at 48-57, Doc. No. 11-9 at 6-7.) He was sentenced to a total of fifty years imprisonment. (*Id*.)

The Arkansas Court of Appeals recited the facts of the underlying case as follows:

> At trial, it was established that DeMarcus Daniels was a local drug dealer who sold from his home. Because of this, he had installed a surveillance-camera system on the exterior of his house. On the night of April 25, 2020, Daniels was at home with his fiancée, Delrico Coleman. Samantha Wells went to the house and bought marijuana from Daniels. As Wells was leaving the house, three men approached. She saw that two of the men were wearing masks, but one was not. While Wells was still walking through the carport, she heard Coleman yell, "Oh, hell no!"; and she heard Daniels say, "Don't do this, chill out, oh no." Then she heard gunshots, and she ran.

> After Wells left, Coleman saw two men enter the house. One was wearing a mask and was armed with a long riffle. The other man was not wearing a mask and was armed with a handgun. Coleman was able to recognize the unmasked man as Crawford because he was a former customer of Daniels and had been to the house before. When Coleman saw the guns, she reached for a 9mm handgun that she had in her purse. The masked man yelled at her to stop, and shots began to fire. Coleman "hit the floor" and lost consciousness. When she awoke, Daniels had been shot and was lying on the floor, unresponsive.
>
> The Blytheville Police Department began an investigation into Daniels's death. As part of their investigation, they recovered footage from the DVD player connected to the surveillance camera at Daniels's home. On this footage, they were able to see Crawford, who was not wearing a mask, leading two other men up to Daniels's house. Crawford was carrying a gun in one hand and made a hand gesture that seemed to indicate he was giving commands to the other two men. Crawford went inside the residence along with another man who was armed with a rifle. The third suspect did not enter the house. Moments after Crawford and the other man entered the house, the video showed glass flying across the screen, the result of someone inside the residence firing a gun through the glass toward the outside. Shortly thereafter, Crawford was the first to run from the scene with the other two men following. The police took screenshots from the footage, at least one of which depicted Crawford standing at the door with a gun in his right hand. The video recording from the surveillance camera, along with these screenshots, were introduced into evidence.
>
> The police investigated further by creating a photographic lineup and by processing the crime scene. In the lineup, Wells was able to identify Crawford as the unmasked man. From the crime scene inside Daniels's house, investigators recovered fifteen spent shell casings. Eight of the shells had been fired by a 9mm pistol, and seven had been fired by a .223-caliber rifle. They retrieved a rifle and a 9mm pistol from Daniels's house, both of which belonged to Daniels. The weapons, the shell casings, and Daniels's body were submitted to the Arkansas State Crime Laboratory. The crime lab analyzed the evidence submitted by the Blytheville Police Department. According to the medical examiner, Daniels had been shot eight times, and he died as a result of these injuries. The crime lab conducted firearm and toolmark examinations that revealed Daniels's rifle did not expend any of the rifle shells and that only one of the 9mm shells had come from his pistol.
>
> Crawford testified in his own defense. Crawford testified that he did not know Daniels and that he had been kidnapped at gunpoint by three strangers in an SUV who gave him a fake gun and told him to "get them in the door."

*Crawford v. State*, 2023 Ark. App. 341, at 2-5, 669 S.W.3d 889, at 894-896 (Ark. Ct. App. 2023).

Petitioner appealed to the Arkansas Court of Appeals, arguing that there was insufficient evidence of his intent to commit first-degree murder and that the jury erred in rejecting his affirmative defense that he was acting under duress. *Crawford v. State*, 2022 Ark. App. 214; 2022 WL 1482211 (Ark. Ct. App. 2022). Finding no error, the Court affirmed. *Id.*

On July 15, 2022, Petitioner filed a *pro se* Amended Petition for Post-Conviction Relief pursuant to Arkansas Rule of Criminal Procedure 37. (Doc. No. 11-9 at 49-59.) He alleged, *inter alia,* the three grounds he raises in the instant Petition. On September 19, 2022, the Mississippi County Circuit Court denied his Rule 37 petition. (*Id*. at 80-84.)

Mr. Crawford appealed the denial of Rule 37 relief and on May 31, 2023, the Arkansas Court of Appeals affirmed. *Crawford*, 2023 Ark. App. 341, 669 S.W.3d 889. Petitioner now seeks relief through filing the instant Petition for Writ of Habeas Corpus. (Doc. No. 1.) After careful review of the Petition, Response, and the accompanying record of proceedings, for the following reasons, I find the Petition is DENIED.

## II. ANALYSIS

Mr. Crawford advances three grounds to support his Petition. He claims his trial counsel was constitutionally ineffective for 1) not properly impeaching the state's witnesses; 2) not seeking a change of venue given the publicity surrounding the matter; and 3) failing to investigate the State's case. (*Id.* at 5-8.) Respondent counters that these claims have been properly addressed by the Arkansas Court of Appeals and Mr. Crawford has not shown the Court's decision was contrary to a decision of the United States Supreme Court[1]. (Doc. No. 11 at 5-6.)

---

[1] Respondent says Petitioner's third argument was not raised in his Rule 37 Petition and therefore procedurally defaulted. (Doc. No. 11 at 10-12.) I agree that the instant argument is slightly different that was previously adjudicated in his post-conviction proceedings. So, I find this to be close call. But after careful review, I conclude it to have been – in substance - previously presented. Regardless, even if Mr. Crawford failed to properly present this claim, it would be procedurally defaulted - as Respondent correctly concludes.

Under the Antiterrorism and Effective Death Penalty Act of 1996, and in the interests of finality and federalism, federal habeas courts are restricted to a "limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Federal courts may not grant habeas relief on a claim that was adjudicated on the merits in state court unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

*i. Unreasonable Application of Federal Law*

For Mr. Crawford to succeed here, he must show that the Arkansas Court of Appeals' decision regarding his Rule 37 petition constituted an "unreasonable application of clearly established federal law" in violation of 28 U.S.C. § 2254(d)(1). Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" federal law if the state court arrives "at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007).

A state court decision involves an "unreasonable application" of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Mr. Crawford has failed to show the Arkansas Court of Appeals' decision was contrary to, or involved an unreasonable application of, clearly established federal law.

The Arkansas Court of Appeals correctly identified the governing legal principle in ineffective assistance of appellate counsel cases as *Strickland v. Washington*, 466 U.S. 668 (1984). *Crawford,* 2023 Ark. App. at 8, 669 S.W. 3d at 898. Under *Strickland*, a claim of ineffective assistance of counsel has two components: (1) that counsel's performance was deficient, resulting in errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense, depriving the defendant of a fair trial. 466 U.S. at 687. The deficient-performance component requires that a defendant show counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. The prejudice component requires that a defendant establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id*. at 687.

When examining ineffective assistance of counsel cases, judicial scrutiny of counsel's performance must be highly deferential. *Strickland,* 466 U.S. at 689. A court must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Counsel's "strategic choices made after a thorough investigation are virtually unchallengeable" in a later habeas corpus action. *Id.*

The Arkansas Court of Appeals showed no unreasonable application of federal precedent when addressing his claim that counsel was constitutionally ineffective by failing to impeach the State's witnesses. The Court stated, "We initially observe that Crawford's counsel did cross-

examine these witnesses in an attempt to impeach their version of the events. The extent of Crawford's counsel's cross-examination of the witnesses was a matter of professional judgment and matters of trial tactics and strategy are not grounds for postconviction relief on the basis of ineffective assistance of counsel." In addition, like his other claims, the Court held that Mr. Crawford did not show a reasonable probability that a more vigorous cross-examination would have changed the outcome of his case. *Crawford*, 2023 Ark. App. at 17, 669 S.W. 3d at 902.

Regarding Petitioner's venue challenge, the Arkansas Court of Appeals correctly noted that, "The supreme court has held that the jury is presumed unbiased, and the burden is on the petitioner to demonstrate actual bias on the part of the jury. *Neff v. State*, 287 Ark. 88, 696 S.W.2d 736 (1985)." *Id.* at 10, 898-899. The Court further noted that whether to seek a change in venue is largely a matter of trial strategy, and the burden rested with Mr. Crawford to show prejudice – a burden he did not meet. *Id.*

The Court similarly addressed Mr. Crawford's failure to investigate claim, saying, ". . . we have held that an ineffective-assistance claim predicated on this ground must demonstrate how a more searching pretrial investigation would have changed the outcome of the trial." *Id.*at 15, 901. Given the overwhelming evidence presented to the jury, in addition to their rejection of Petitioner's claim of duress, I find no constitutional error here.

Accordingly, as a matter of federal law, I am required to apply a deferential analysis to those claims fully adjudicated in state court, as is the case here. *Davis v. Grandlienard*, 828 F.3d 658, 664 (8th Cir. 2016). After reviewing the decision of the Arkansas Court of Appeals, I find it is not contrary to, nor an unreasonable application of, an established federal law. Therefore, based upon the deference given to the state court, the relief Mr. Crawford seeks cannot be granted.

*ii. Unreasonable Determination of the Facts*

Under subsection (d)(2), a state court decision is based on an "unreasonable determination of the facts" "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003); *see also* 28 U.S.C. § 2254(e)(1) (a state court's factual finding shall be presumed to be correct, and the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence). After reviewing the decision of the Arkansas Court of Appeals, I find for the reasons discussed above that its opinion was not based on an unreasonable determination of the facts.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). I find no issue on which Mr. Crawford has made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability shall issue.

## IV. CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Mr. Crawford's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 1) is DISMISSED with prejudice.

2. A certificate of appealability shall not issue.

DATED this 13th day of May 2024.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE